BRANCH T. ARCHER ET AL *v.* YAZOO & MISSISSIPPI VALLEY RAILROAD CO.

DEEDS.   *Life estate.   Conveyance by remainderman.   Construction. Estoppel.*

Where a son owned under a trust deed executed by his father the exact interest in lands which he would have inherited, on the death of his father intestate, had the deed not been executed, and after the death of the father conveyed, for a valuable consideration, all the interest he had in the lands "as heir of his father," he will not be permitted in equity to retain the consideration received and claim that his conveyance was wholly inoperative, but his deed will be construed as conveying his interest in the land.

FROM the chancery court of Claiborne county.

HON. WILLIAM P. S. VENTRESS, Chancellor.

The railroad company, appellee, was complainant in the court below; Archer, appellant, was defendant there.

In 1847 Richard T. Archer conveyed his lands in Claiborne county to S. and J. Coburn, in trust for the use and benefit of

his wife, Ann B. Archer, for her natural life, and at her death to such child or children of said Ann B. Archer as should be living at the time of her death. Both of the Coburns died, their estates having been fully administered. On March 5, 1883, Mrs. Ann B. Archer conveyed to the New Orleans, Baton Rouge, Vicksburg & Memphis Railroad Company, to all the rights and property of which the Yazoo & Mississippi Valley Railroad Company succeeded, a right of way 100 feet wide across this land. Her deed purported to convey a fee simple title to this strip of land. The railroad company entered upon the land, and constructed and operated its railroad thereon. On January 23, 1888, Branch T. Archer, one of the children of Richard T. and Ann B. Archer, conveyed to his mother, Mrs. Ann B. Archer, for the consideration of $400, all his right, title and interest in said lands, the deed reciting that it was his purpose to convey to her "all interest he might have in any and all lands as heir of his father." In 1898, after the death of Mrs. Ann B. Archer, Branch T. Archer and the other children of Mrs. Ann B. Archer who were living when she died had a partition of said lands by agreement, but the railroad company had no notice of it, and a part of it was set apart to Branch T. Archer. Branch T. Archer and others taking under the deed of Richard T. Archer brought an action of ejectment against the Yazoo & Missisippi Valley Railroad Company to recover this strip of land granted for a right of way. The Yazoo & Mississippi Valley Railroad Company then brought this suit in the chancery court to enjoin the ejectment suit, and asked the court to set aside to it, out of the part set aside to Branch T. Archer in the partition, the land occupied by it as a right of way. Form a decree granting the relief sought in the bill, defendants appealed to the supreme court.

*J. McC. Martin,* for appellants.

Both Ann B. Archer and her children actually surviving her took the land in question under the trust deed, and not by de-

scent.  Richard T. Archer, at his death, left no estate whatever in "Redding Bottom"; hence the deed of B. T. Archer, now presently considered, conveyed no title subsequently to Mrs. Ann B. Archer.  The contention of appellee in the lower court was:  That Ann B. Archer acquired a fee simple undivided interest in "Redding Bottom" by the deed of B. T. Archer, made to her on the 23d day of January, 1888.  At the date of said deed B. T. Archer had an interest of an undivided one-seventh in the said one hundred-feet strip, through the "Redding Bottom," constituting a right of way of appellee, contingent on his surviving his mother, Ann B. Archer.  His deed does not attempt to convey this.  It attempts to convey "All his right, title and interest in and to any and all real estate in said Claborne county of which his father died seized and possessed, whether his right be in possession, remainder or reversion.  He recites in said deed that it is his intent to convey any and all interest he may have (subject to Ann B. Archer's dower) in and to any lands he may have as heir of his father in said county."  He had, as above stated, no land from his father in said "Redding Bottom," as heir, and his mother had no dower right in same.  Hence, the deed he made her really conveyed nothing.

The contention is, then, on the part of appellee, that the deed to Ann B. Archer, made in 1888 by B. T. Archer, relates back to the deed she made five years before to the N. O., B. R. & M. R. R. Co.  That thus it puts in the appellee his undivided interest in "Redding Bottom," because his mother made a fee simple deed to said railroad, which ought to make her after acquired fee simple enure to it, as fully as though she had the same at the date she made her deed in 1883.

In reply to said contention, appellants say:  First, all improvements made by the N. O., B. R. & M. R. R. Co., and its successors, were made long prior to the deed from B. T. Archer, and were made under the deed to the life estate, and no other; that thereby their rights became fixed, and that they could not

complain or demand recognition of any claim for improvements made under said deed of 1883. Second, that, even if deed from B. T. Archer is a good and valid conveyance of his interest in "Redding Bottom" to his mother, yet it would not enure to appellee, and would not, and could not, affect the *status* of his cotenants. They would be entitled to an undivided six-sevenths interest in said "Redding Bottom" strip of one hundred feet, with all improvements. Further, that all are entitled to the said strip, as and under said trust deed to the Coburns, and as remaindermen, while the said B. T. Archer, if his deed to his mother should be effective, is entitled to an undivided one-seventh of an undivided one-seventh as heir-at-law of his mother. Third, that said appellee can take nothing under the B. T. Archer deed to Ann B. Archer, and, if they could, would not be entitled, under the facts and law, to have the particular one hundred-feet strip, through "Redding Bottom" set aside as its interest under such B. T. Archer deed, as it cannot assume such to be the interest of B. T. Archer deeded to his mother, as they did not make any of the improvements put on said one hundred-feet strip after he made his deed aforesaid.

*Mayes & Harris,* for appellee.

The theory of the bill and the authority upon which it is founded will be found in the case of *Paddock* v. *Shields,* 57 Miss., 340. The railroad company, having taken possession of and improved a small portion of the common property, was entitled to have that portion set apart to it. It does not seem to be seriously contended by counsel for the appellant that this could not be done in the proper case. He seems to be struggling desperately with the proposition that Branch T. Archer had nothing whatever to convey to Ann B. Archer; that his deed to her conveyed nothing, and, therefore, that the railroad company could not in this case set up as against him or any of the other tenants that it had any interest in the land after the

death of the said Ann B. Archer. This contention, we think, is utterly without merit.

The interest of B. T. Archer in the land was a vested remainder, and as such was transferable.

On this subject see Vol. 20 A. & E. Ency. Law (1st Ed.), p. 839, and authorities cited. Tiedeman on Real Estate (1st Ed.), secs. 37, 402, 403, 411, 420, 421, 424.

Branch T. Archer, having conveyed all of his interest to his mother, cannot certainly set up any title as against the railroad company in the lands which he purported to convey to his mother. *McInnis* v. *Pickett,* 65 Miss., 354; *Bramblett* v. *Roberts,* 68 Miss., 325; *Hunt* v. *Wright,* 70 Miss., 304; *Chambliss* v. *Person,* 77 Miss., 806.

The court will bear in mind that it is not set up in the answer anywhere that any of the other parties' interest in the "Redding Bottom" field would be injured in any way by this partition. No plausible defense is set up. It is contended, however, by counsel in his brief that they would be entitled to an interest in the improvements which the railroad company has put upon the ground, which, so far as anything appears, is but the roadbed and superstructure.

It is very well settled in this state that they could have no claim and no benefit from the improvements of this character put by the railroad company on the land.

It is settled in this state that the rule in regard to fixtures and improvements which long existed at common law has no application whatever to the chattels fixed to the freeholder by a railroad company. See *R. R. Co.* v. *Dickson,* 63 Miss., 380; *R. R. Co.* v. *LeBlanc,* 74 Miss., 674.

It is perfectly manifest from the facts set forth in this record that these parties are barred long and long ago. The railroad company has been in actual possession for nearly twenty years, and the trust deed under which these parties claim was executed in 1874. The trustees were long since barred.

The railroad company has been in possession, claiming the land adversely to everybody, under a deed, absolute on its face, conveying a fee simple, and all these parties now suing are barred. Code 1880, § 2694.

CALHOON, J., delivered the opinion of the court.

If Ann B. Archer had owned the fee in the right of way, the railroad company got it by her deed of date March 5, 1883. But she did not own the fee, but a life estate only, and the railroad company got that alone by the deed, and stood then in her shoes, with all her rights, and none other. If any interest whatever passed by the subsequent conveyance of January 23, 1888, by Branch T. Archer to Ann B. Archer, who was his mother, this interest inured to the railroad company. This conveyance purports to carry in fee his undivided interest as "heir at law" of his father, Richard T. Archer. In fact, he had no interest as such heir at law, but he did own an interest as remainderman, to take effect at the death of his mother, identical with that he would have had as such heir if his father had never executed the deed in trust to the Coburns. His mother manifestly intended to buy this interest, and paid him $400 for it, and he manifestly intended to convey this interest to her. If he did so intend, the description of his title as being heir at law of his father was an honest mistake of fact, not of law. If he did not so intend, his representation of the derivation of his title was a glaring and palpable fraud. In either case he cannot, in a court of equity, where he now is, be heard to say that his solemn conveyance was a mere farce, carrying absolutely nothing to his mother for the $400; and even this he does not offer to restore. The railroad company has the right to hold and to have the right of way taken out of Branch T. Archer's share of the estate for its ownership.

*Affirmed.*